THE PEOPLE, *ex rel.* WHITLOCK, *v.* BENTON, Auditor, &c.

The words, "collectors of tolls on the canals" (1 R. S., p. 229, § 69), are merely descriptive of the officers and their business, and do not refer to their places of residence or the district in which their official business is to be conducted. The statute authorizes the appointment of a collector of canal tolls in the city of New York.

APPEAL from the Supreme Court, where a peremptory mandamus had been issued, requiring the defendant, as auditor of the canal department, to approve the official bond tendered by the relator as collector of canal tolls at the city of New York, and to do such other acts as might be necessary to enable the relator to exercise the duties of that office. The relator put his refusal to approve the bond on the ground that the canal board had no power to appoint a collector of canal tolls to be located elsewhere than on the line of some of the State canals.

*John H. Reynolds*, for the appellant.

*David Dudley Field*, for the relator.

ROSEKRANS, J. The statute gives the canal board "power to appoint so many superintendents of repairs, and collectors of tolls on the canals, as they may deem necessary." (1 R. S., 5th ed., § 135.) The words, "superintendents of repairs on the canals," and "collectors of tolls on the canals," in this section, are merely descriptive of the officers and their business, and have no reference to their places of residence, or the districts in which the business of their respective offices shall

be conducted. They mean nothing more than "superintendents of canal repairs," and "collectors of canal tolls." These officers are indifferently spoken of in the statutes by these names and those used in the section first above referred to. In the list of administrative officers, "superintendents of canal repairs" are mentioned. (1 R. S., 381.) In the statute providing for the mode of their appointment and the tenure of their office, they are called by the same name. (1 R. S., 405, § 9.) In the same statute (§ 10), the collectors are called "collectors of canal tolls." In the statute which confers upon the canal board the power to appoint these officers and to prescribe their number, and giving the power of removal, they are called "superintendents of repairs on the canals," and "collectors of tolls on the canals." These different names are intended to apply to and designate the same officers. It is evident that by the section first cited, the legislature did not intend to define the place or district in which these officers should discharge the duties of their respective offices. There is a general statute, requiring every officer included in the class of administrative officers, to be confined, in the execution of the duties of his office, to the district, &c., for which he shall be appointed, except when otherwise provided by law. (1 R. S., 5th ed., 383, § 14.) The districts in which the officers referred to are to perform their duties, is not specified in the statute.

The designation of these districts is left to be regulated by the canal board. It was evidently contemplated that numerous districts would be necessary, and it was intended to confer upon the canal board unlimited discretionary power as to the number, extent and location of such districts. The nature of the duties of superintendents of repairs is such as to require that their districts should be a part of the canals; and it would be absurd to suppose that the canal board would appoint a superintendent of canal repairs over any other district than a portion of the canals. But courts will take judicial notice of the general character of the business of the country, and the mode in which it is conducted. We know that canal boats, laden with the products of the west, pass through our canals,

into the Hudson river, and thence to New York, without breaking bulk, and that they take return cargoes at New York, to be transported, without breaking bulk, to greater or less distances upon our canals. The convenience of having a collector of canal tolls in the city of New York, to whom the tolls on such return cargoes can be paid, and by whom clearances can be given, can be readily seen. Such tolls could, at least, be as conveniently collected at the city of New York as at any place on the canals; and if a collector is appointed in the city of New York, and is· confined to that district in the performance of his duties, such appointment is clearly within the power conferred upon the canal board.

There are some sections of the statute which assign duties to, and impose restrictions upon, collectors of canal tolls whose offices are upon the line of the canals, which are not applicable to the collector in the city of New York. Such are the sections which make it the duty of every collector of tolls to assign berths to all boats when loading or unloading at any landing place on a canal where disputes shall arise. (1 R. S., 5th ed., p. 427, § 272.) Another is the section which prohibits the payment of office rent of a collector except upon the certificate of the canal commissioner having charge of the division of the canals on which such collector is appointed and where such office is located. (Laws of 1859, ch. 495, § 4.) But these sections do not limit the power of the canal board to appoint a collector elsewhere than upon the line of the canals.

We entertain no doubt that the canal board, in making the appointment of the relator as collector of canal tolls at the city of New York, acted in accordance with, and within, the power conferred upon it by statute, and that the order appealed from should be affirmed, with costs.

DAVIES, SELDEN, EMOTT and MARVIN, Js., concurred.

WRIGHT, J., (dissenting.) The sole question involved is the power of the canal board to create the office and appoint a collector of canal tolls at the city of New York. If the canal

board appointed the relator a collector of canal tolls, to reside and keep his office in the city of New York, without authority, it was the right and duty of the auditor to refuse to recognize him as such officer, or to approve or file his official bond.

It is not claimed that the canal board can exercise any authority not given to it by statute; and it possesses no power except that which relates to the canals of the State, as they are described and designated by the legislature. (1 R. S., 5th ed., p. 578.) The power to appoint collectors of tolls is conferred in these words: "They shall have power to appoint so many superintendents of repairs and collectors of tolls on the canals as they may deem necessary," &c. (1 R. S., 5th ed., p. 602, § 135.) The defendant insists that this is a grant of power to appoint collectors of tolls to be located and their duties performed on the canals, and within the territorial jurisdiction of the canal board, and not elsewhere. The language of the section is interpreted as an authority simply to appoint toll collectors on the canals of the State, as they are defined by law. On the other hand, it is insisted that the power is conferred to appoint collectors of tolls receivable for the use of the canals of the State without regard to the question whether the appointee is located on the canal where his duties are to be discharged, or not.

I am of the opinion that the canal board derived no authority from this statute to locate a collector of canal tolls in the city of New York and designate the relator to fill such office. The city is not, in any sense, on any of the canals of the State. The duties and powers of the canal board are exclusively confined to the control and management of the canals of the State, as the legislature have defined them. One of the powers conferred is, " to appoint so many superintendents of repairs and collectors of tolls *on the canals* as they may deem necessary." This is not a mere power to fill an office, but to create one, to be located at a place on the canals where tolls are and may be collected by law, and where their payment can be enforced. The legislature, in conferring the power to appoint superintendents of repairs and collectors of tolls " on the canals,"

meant just what a fair interpretation of the language imports, that the offices and officers thus appointed were to be located and their duties performed, on the canals. Having regard to the nature of the duties to be performed, that would certainly be a strained construction of the law that imputes to the legislature an intention that the canal board should locate canal appointees all over the State and even beyond it; for if the board may, in executing the power, locate a superintendent of repairs, or a collector of tolls, in the city of New York, one hundred and fifty miles distant from where their duties are to be performed, and wholly out of the territorial jurisdiction of such board, it may do so at Boston or Philadelphia.

We are not, in construing a statute, to place a meaning on the language employed that will lead to absurd consequences or impute to the legislature an absurd intention, when it may be avoided. The power to appoint superintendents of repairs of the canals is conferred in the same terms as the power to appoint collectors of tolls. If, then, the legislature intended to confer upon the canal board the power to appoint the latter class of officers, whose offices should be located, and their duties performed at New York, the same intention existed as to the former class. But it would be absurd to urge a legislative intention to invest the canal board with the power to locate a superintendent of repairs in the city of New York, when no duties were to be performed. On the contrary, as repairs to canals must necessarily be done upon them, the fair presumption is that, in conferring the power to appoint superintendents of repairs on canals, it was intended that the office should be located, and the duties performed, in the only place where they were needed, or could possibly be done, viz., on the lines of the canals, and within the territorial jurisdiction of the canal board. I presume no one will contend that, under the power conferred by the section of the statute cited, the canal board could appoint a superintendent of repairs of the canals for the city of New York. If not, the board could not appoint a collector at that place, the statute conferring any

authority at all to appoint, being the same and it conferred in the same language, in respect to both offices.

But, again. It is not to be assumed that the legislature intended to have a collector of tolls located where no tolls are legally payable. It is the actual use and navigation of the canals that entitles the State to demand and collect tolls; and no person intending to navigate any of the canals is bound to pay tolls for such navigation at a point remote from the canal and not within the jurisdiction of the canal board. He is not bound to pay tolls at the city of New York, one hun-hundred and fifty miles distant from the place where they are payable, and where payment can be enforced. It is, therefore, the more reasonable interpretation of the legislative meaning in the use of the words, "shall have power to appoint so many collectors of tolls, *on the canals,* as may be necessary," to hold it to be a grant of power to the canal board to locate so many collectors, and in such places on the lines of the canals, as such board, in its judgment, deem that the public interests, and the public works confided to its control and management, require.

There are various statutory provisions regulating the management of the canals, inconsistent with an intention by the legislature that canal offices and officers may be located distant from the line of the canals. The board of canal commissioners are to assign to each commissioner, for his special charge, a designated portion of the canals; and the commissioner so assigned to a particular division, has the power, and it is his duty to inquire into the official conduct of superintendents of repairs, collectors of tolls and other subordinates, and to enforce the faithful execution of all the duties imposed by law upon them. So also it is made the duty of every collector of tolls to assign berths to all boats, when loading or unloading at any landing on a canal, where disputes shall arise concerning the same. (1 R. S., 5th ed., 427, § 272.) It is also provided, that no rent of the office of a collector can be paid or office rented, except upon the certificate of the canal commissioner having charge of that portion of the canals where the

office is located. (Laws of 1859, ch. 495, § 4.) These provisions, and all the laws pertaining to the management of the canals, are inconsistent with the location of a superintendent of repairs or collector at a place off from the lines of such canals. Under the jurisdiction of which canal commissioner is the collector of tolls in New York? Or on which of the different canals of the state is he a collector of tolls? What canal of the state has a landing place at New York? How can the rent of the collector's office in New York be paid or the office rented, the city being no portion of the canal, and not in the charge of any canal commissioner competent to make a certificate? I imagine it would be difficult to solve these inquiries.

I am, therefore, of the opinion that the legislature has not yet invested the canal board with power to appoint a collector of tolls at New York. If the public convenience is to be promoted by the location of such an office there, it is for the legislature, and not the canal board, to authorize it. The order of the Supreme Court should be reversed.

DENIO, Ch. J., and BALCOM, J., were also for reversal.

Judgment affirmed.